Housing Authority of the Capital of Puerto Rico, Plaintiff and Appellee, *v.* William A. Hutton, Defendant and Appellant; and John Doe and Richard Doe, Defendants.

No. 8391. Argued April 9, 1942.—Decided May 21, 1942.

*E. H. F. Dottin* for appellant. *James R. Beverley, R. Castro Fernández* and *José López Baralt* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

This is an appeal from a judgment decreeing the condemnation of a parcel of land measuring 11,494.29 sq. m., upon payment of its market value which the court assessed at $68,965.74, that is, at the rate of $6.00 per square meter.

In seeking a reversal of the judgment, the appellant urges that the court *a quo* manifestly erred in assessing the land condemned at $6 per square meter, and that it likewise erred in imposing the payment of ·costs on the defendant.

The plaintiff in its complaint appraised the land at $4.49 per square meter, totalling $51,609.33, while the defendant in his answer alleged that the parcel was worth $229,900, that is at the rate of $20 per square meter and, moreover, claimed $100,000 as damages.

There being a marked conflict in,the evidence, it becomes necessary to determine whether the finding made by the trial judge is supported by the evidence. To this end we will summarize the evidence of both parties and shall then set forth the grounds relied upon by the trial judge for his conclusion.

The witnesses for the plaintiff were Vicente A. Tejera, Gonzalo Diago, Jorge E. Saldaña, E. W. Rackne, and A. W. Fernández.

Tejera, the first witness to take the stand, stated that he is general tax assessor in the Treasury Department and that, taking into account the value of the other properties located within the same zone—sold in Puerta de Tierra and on the same terms as the property of the defendant, and there existing at present in said place a slum formed by 112 to 114 houses—assessed the land of said defendant at $4 per square meter.

Gonzalo Diago, a former President of the Housing Authority of the Capital, testified that José P. Miranda and Antonio Miranda offered to sell the land in question to defendant Hutton at $4 per square meter; that the People of Puerto Rico purchased the land from the heirs of Riera at $3.49 per square meter and sold the same to the Housing Authority of the Capital at $5 per square meter.

Jorge E. Saldaña appraised the land in question at $4.20⅓ per square meter, and stated, moreover, that Cloy sold to the West India Oil Company, about eighteen months ago, land in the same zone at $5.05 per square meter, and that at the Paseo de Covadonga, where the Llamas Ice Plant is located the heirs of Crosas and the Banco Comercial de Puerto Rico had sold land about the time of the trial of the present case, November 28, 1940, at $8 per square meter, the deeds being then about to be signed; that Casals sold clear and dried land facing San Agustín Street at $10.00 per square meter, and that in the Hutton parcel there are no streets whatever.

The expert witnesses, E. W. Rackne and A. W. Fernández, appraised the land of the defendant at $54,344.22. Gilberto Font, secretary of the Housing Authority, valued said land at $4.50 per square meter. During his testimony Font testified that the filling of the land would cost at least $1.50 per square meter and that an outlay would have to be made for the purchase and wrecking of the houses thereon and money advanced to the tenants to vacate the same, totalling

about $3.40 per square meter; that the People of Puerto Rico had to pay for moving the houses to the south side of the Fernández Juncos Avenue from the land sold by the heirs of Riera at an average of $3 per square meter. Font also testified that buildings must be erected on said land, on wooden posts, at a cost per housing unit of about $260, that is, at $3.50 per square meter, and if the posts were of concrete they would cost 15 per cent or 20 per cent more. Font further testified that the land bought by the West India Oil Company is high and dry and was sold at $5.05 per square meter.

The witnesses for the defendant were Bernardino del Corral and José M. Canals, an engineer.

The former appraised part of the land facing Fernández Juncos Avenue at $10 per square meter and the remainder at $5. The latter, Canals, valued it at $9 per square meter and stated besides that the filling of the land would cost about $5,000 and that it would require about 8,000 cu. m. of earth to fill the same at a cost of from sixty cents to sixty-five cents per cubic meter.

After a slight analysis of the evidence for both parties, the trial judge in his opinion said:

"We had an opportunity to view the land of the defendant and that purchased by the plaintiff from The People of Puerto Rico and it is our conclusion that there is no difference whatever between them, save that in that bought by the plaintiff there are streets which looks like Venetian canals on account of the volume of stagnant water to be found there. While taking said view we were able to notice that all the land and building lots facing the parcel of the defendant are filled, quite dry, and buildings are being erected thereon for business purposes.

"According to the testimony of Font, plaintiff's secretary, the filling of defendant's land so as to be on the same level with the land of the Texas Co. (P. R.) Inc., which was sold at $9 or $10 per square meter, or with the other lots which were valued at from $10 to $12 per square meter, would require an outlay of $1.50 per square meter, and the purchase and wrecking of the houses standing

thereon, including the removal of their occupants, would cost about $3.40 per square meter, or $4.90 in all.

"The witnesses for the defendant testified that his land was worth from $9 to $10 per square meter, and supposing that to be the value per square meter, defendant's parcel would be worth $114,940, but never $329,900 (*sic*) as alleged by the defendant.

"It is a rule recognized by courts that where the state exercises its right to condemn private property for public use, the owner of the condemned property should be paid the reasonable market value of his property; but this does not warrant property owners to take advantage of the public need and to require the state to pay for their property more than the same is worth. The condemnation by the state of private property without paying a reasonable price for it would be as illegal and arbitrary as to pay the owners thereof more than the same is worth.

"* * * * * * *

"*After an analysis of the whole evidence introduced by the parties* in the light of the applicable law and jurisprudence, we reach the conclusion that the sum of $51,609.33, deposited by the plaintiff, is not a fair and reasonable value of the parcel of the defendant, William A. Hutton, and that taking into account its location, size, the value of the lots within the zone where the same is located, and the uses to which the same might be devoted owing to their location within a commercial zone, said parcel has a market value—which it had in February of last year—of $68,965.74, that is, at the rate of $6 per square meter, which we consider a just compensation to the defendant for being deprived thereof.''

As may be seen from our summary of the evidence introduced by the parties, there is a marked conflict therein, and the judge, who took the view and saw and heard the expert witness testify, estimated that the value claimed by either party was not exactly a fair value of the land and concluded that he should assess the same at $6 per square meter, that is, a price somewhat greater than the one offered by the plaintiff and much less than the amount demanded by the defendant, which in our judgment is clearly excessive.

It has not been satisfactorily shown to us that the trial judge committed manifest error in appraising the property

as he did, and this being so, since we do not have the opportunity we had to weigh the testimony of the experts, not only because he saw and heard them testify, but also because of the view taken by him, we fail to see how we could hold that the finding made by him is erroneous, and therefore, we must not disturb the same.

██ Regarding the second question, that is, the pronouncement of costs, inasmuch as the judgment in this case was rendered on January 14, 1941, when the amendment to §327 of the Code of Civil Procedure was already in force, which made it mandatory for courts to grant costs to the successful party, and bearing in mind that the defendant challenged the right of the plaintiff to bring condemnation proceedings, no other conclusion may be reached than that the award of costs in favor of the plaintiff was in accord with the law.

For the reasons stated the judgment appealed from must be affirmed.

Mr. Justice Travieso did not participate herein.